118-4349, Ravenswood Disposal Services. Requesting a take-out order. May I help you, sir? Thank you. Good morning. You have five minutes in your slot. The primary issue before the Court today is whether the finding that Sergio Delgado was a dependent, was a dependent entitled to death penalty under the Illinois Workers' Compensation Act, was against the merits of Sergio Delgado. But if you control his actions, you can expect to lose our case. The section 7 of the Illinois Workers' Compensation Act is important to us. It states that if a child is found to have deceased in a children's activity, the child is deemed a deceased employee of the country and obliged to secure for a child to be moved to deceased employees within one or more months. The other statute, the Illinois Adoption Act, which states that after the entry of either an order terminating the parental rights or the entry of the decree of adoption, the child can be deprived of all legal rights as a respect to the child. I'm just going to go back. I don't want to go through it all. I don't want you to have to deal with the whole state of the facts. So we're all on the same page. Maria and Paul were married. Sergio was a child. Maria and Paul separated. Maria took Sergio and moved him with Isidoro Delgado. At that point, Sergio started using the last name Delgado, and at the time of his death, he really did not have much contact with them. There was an order. I think it was the 34th. There was an order. Ordering some payment of money, and there was testimony that he paid a couple hundred dollars in cash a month. There was also, I didn't quite understand it correctly, but when you hear it right, it's not pretty much contact. Did Sergio pick the child up to pretend? I would say that was not the case. It was mostly occasionally provided by the school. There was basically no contact for several years. Counsel, let me ask a couple of questions. I know there was evidence that he had some contact, perhaps minimum, provided some support. How old was Sergio when Raul died? Wasn't he a minor? Yes. Okay. He was a minor, and he wasn't adopted yet by Isidoro, correct? Correct. So doesn't that give him a right independent of the statute you cited? Wouldn't he still qualify when he's a minor? Yes. He could definitely qualify this year under Section 7 as a survivor. Okay. There's still a question of how we prove our dependency. So the only proof we have that the dependency of the claim is kind of a multilayered finding, usually I think in dependency cases we see evidence of bank records, canceling checks, proof of payment. In this case, all we have is the non-substantiated testimony from Maria that he was allowed to make these payments. We don't have any other evidence of dependency. Correct. Well, how do you – it's a little troubling. How do you quantify the amounts of, say, a dependency, the amount contributed? I mean, if the father is providing some support, and it doesn't seem to be disputed by you, some support. I don't – well, I would say – I'm just going to say that that testimony is non-substantiated. I think the proof that he – When you say non-substantiated, you mean non-cooperative. There was testimony by the mother. Non-cooperative. Okay. It doesn't have to be cooperative, does it, to be believed by the commission? I would say you are correct, no. But I think the arbitrator in this case would have to say to the state that there was no – that there was no headway in calculating that credibility. Yeah, but keep in mind, the arbitrator's decision was not reviewed by us. Reviewed the commission's decision. Correct. My point of question is, if the commission believed the mother, they can obviously do that, can't they? Yes. So back to my original question. Is there a certain amount of support, certain level, monetary level, that has to be proven here to constitute dependency, in your opinion? I don't think – I would say if we can show that this bureau was providing the maximum amount of support in that Raul's contribution was 5 to $10, you know, for birthday presents, that's not true dependency. Well, did you show that? I think we did. I think we did. I think the record reflects that we did make some substantial efforts due to the credibility of knowledge. But again, the commission makes the final decision. I think there's enough evidence there for them to find it. Did they find it? Did they find it? No, but I guess it's – There we are. I'm not sure. Excuse me. The commission is 60 percent, which I believe, in terms of the degree, not because we know they've got dependency issues, but because it was actually lost. But again, we have to review – we are here to review the majority decision by the commission, not the arbitrator, not the dissent. So, go ahead. So, what is the core issue here is – what exactly? Well, I think – I wouldn't argue with you, Dave, that dependency wasn't proved prior to the adoption, but certainly a stronger argument for the respondent is that once we did have the adoption, that procedure of dependency rights were terminated. Fast-back to the current case of adoption, where the Department of Inventory Services established a precedent that the executive of a minor's adoption claimed death under Section 7A. In that case, it was not disputed that the minor was adopted by the stepfather. The court ruled at the time that it was a deceived accident. There was no present application for deceased support component. She was fully supported by her father. Basically, the law was not necessary to establish that the child was completely dependent on the deceased. It must be established that legally, a forceful basis for dependency exists to define the employee's actions. This is sort of – this, I guess, is why the case is taking further than the Hawkins-Pierce case. They got more into the – when we're talking about dependency, the kind of phrase that's expanded and craned, to get into the nitty-gritty of the exclusion of father, daddy, what the actual relationship was between the adopted father and the child in that case. Can I quote you the section? Section 7A is to provide some compensation to persons who were dependent upon a deceased employee for support.   Correct. Are you contending that Roel had no legal obligation to support Sergio? He did. I don't know if that would be an honor. I mean, I don't – His wife testified – the mother testifier was – said he paid his child support pursuant to the requirements, and when he got paid in cash, he gave her $200 or $300 a week. I think, yes. The answer is yes, in order for support. You concede that, correct? Yes, I concede that, absolutely. And it says legal obligation. We're not talking about honoring or fulfilling, are we? Right. There was an actionable legal obligation by the minor, the minor's representative. Now, your argument is that an adoption ends that legal obligation by Roel. Correct. Except there's one problem. The Illinois Supreme Court has already said that it has to be under a legal obligation to support at the time of the accident, not at some later date. That's Yellow Cab versus the Industrial Commission. The decedent was under an obligation to support at the time of the accident. There is no authority for the proposition that that section of the act changes merely because he gets adopted by somebody else later. Well, I guess I would say we have a couple of things to talk about. We'll take that to session seven. We know that for a little or little less, the benefits terminate if they remarry after a two-year lump sum, 25 years on $100,000 in benefits. And that's provided in the act? It's provided in the act, correct. Okay. So what's provided in the act in this instance? We don't. We just have to determine what dependency means and follow our former case law, I believe, for which I think that's a precedent that once it is legally adopted, it terminates the obligation under the Adoption Act and following our case law that we have here. But the act itself says at the time. At the time. At the time. But there's no drafting in that act that deals with these subsequent situations, is there? That's correct. Okay. But the drafters of the act were capable of dealing with the widow situation, weren't they? They were. And they put language in there. They had the foresight to do that. Now, is there some type of construction under a statute that says that if they know how to do it, they choose not to do it, they meant what they said? That statute is true. Okay. And that's a Well, I would say it's a point that Commissioner Simpson brought up with this paradox that we have here. And she wrote, if a zero-dollar died in a work-related accident after people died from surgery, surgery will be entitled to survivor benefits of the worker's compensation. In effect, the decision of the arbitrator to buy surgery enhanced survivor benefits because he or she is entitled to survivor benefits upon a work-related death by a lawsuit by the law and the statute on our decision is zero. This result would be fundamentally unfair and might have been process implications. To which wouldn't we, isn't the logical response, well, it's not up to us to read exceptions into the act. The legislature should be the ones that provide any exceptions or limitations. But I think we should rely on the case law here that puts in these dependency issues before the adoption. Once the adoption comes in, we have a clear adoption notice which states, the order to adopt and corroborate the case law. The order of the adoption states, in the relevant part, That's all true. But I think you're sidestepping the issue. Let me ask you a very simple, straightforward question. When Raul died, had Sergio been adopted by anyone yet? No. Not by the time he was adopted. So where does that leave your case? What happens afterwards, as Justice Hoffman alluded to, is irrelevant.  I think it's relevant. I think it's relevant. It isn't? But you're ignoring the date of death as the whole issue here. What was the situation, the circumstance, when Raul died? That's the point in time where the rights and obligations are fixed. You could kind of say, what if he was adopted 10 years later? Does it really matter? What matters is, what was the legal situation on the date of his death? I think it does matter. I agree with you in that it's important as a major matter in the case, but I think a distinction can be made, it should be made, once that adoption goes through. I think it does switch, just like for a will or river, that marriage changes the status. You no longer can have. So when do you determine the status? On the date of Raul's death or later on? I would say the better argument is on the date of adoption. Except that's not what the Supreme Court said. Yes, I see. The Supreme Court said, and I'll quote it to you, he was under a legal obligation to support them at the time of the accident, close quote. So your interpretation doesn't square with the Supreme Court's. I think it does fall into that. I would make the argument that it would fall back to both the adoptive father may very well be obligated after the adoption, but that's not what controls the Workers' Compensation Act. The Supreme Court says what's controlling is whether he was under a legal obligation to support at the time of the accident, not at some later date. And there's no question this man was obligated to support this child at the time of the accident. Are you asking us to overrule the Illinois Supreme Court? Is that what you're asking us to do? I would say there could be an exception under these circumstances, yes. You'll have time in reply. You have five minutes in reply. Your time is a little bit over then. Thank you. Thank you. Can I please report? Counsel? Professor J. Sifio here on behalf of the defendant, Ali, has appeared on several occasions before this court. As I indicated to counsel before you guys came out, he was one of the most memorable ones to be here on behalf of. And it was truly something that was memorable to me. I think at least two or three of you were here on that day. Only one. Two. Two of them, I thought. Two. On the comp panel. I'm sorry? On the comp panel. Yeah. Were you on the comp panel then? Yes. You were? Yeah. Oh. Anyway, I appear here requesting that the decision of the Illinois Workers' Compensation Commission be affirmed in its entirety. All of the issues have been addressed by the justices collectively with the question of counsel. And I believe that the Workers' Compensation Act is clear regarding the issue of penancy. The facts in this case are ultimately clear that he had the right to pay for child support and did pay for child support, which was unsubstantiated. It was unrewarded testimony. They had the opportunity to provide the information to the contrary, and they did not. The United States Penitentiary, too, granted it to us, and no information was provided on their behalf to contradict that testimony. They believed her. It was a support order. There's no question. So that's really the essence of the case, is it not? It is. That's correct, Your Honor. Was a support order entered into evidence? I do not believe it was, but there was testimony that was provided. There existed one? Yes. I can look at the transcript here. I don't know if they put the order in the moratorium or not. I just know that, at that point, he had the right obligation to pay for the child's interest. That's short-circuited. That was her testimony? There was nothing to contradict that in the commission belief? Correct? Yes. Her testimony was he was required to pay $313.40 every other week under the Merrill Settlement Agreement.  And you get $230 for every other week. If you would like me to address the issues of employer-employee relationship, I certainly can. I believe the arbitrator indicated in his decision all of the information that substantiated the employer-employee relationship and the substantiation of penalties and authorities that were written in conjunction with those findings. I also did indicate, however, that the dissenting commissioner would have found a different way. First of all, there was no case law to support her position. Secondly, it was hypothetical. And thirdly, if you look at the hypothetical that was given, she was totally incorrect. If a person, in this case Sergio Delgado, had the ability to collect from his natural birth father, Raul Lugunas, he would not have the opportunity to collect for Isidoro Delgado until such time that there was a formal adoption. At that time, his rights would have extinguished had Sergio to have Raul Lugunas been alive, and he could only collect under one. So the commissioner's dissent is faulty to begin with. As I indicated to opposing counsel, we reviewed the majority decision. You don't have to spend a lot of time on dissent. I don't understand the fact that the decision of the Illinois Industrial Commission on all issues is incorrect. It should be heard in its entirety. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, counsel. Allow me to come out to our secondary issue as to whether or not companies are eligible in this case. Obviously, the colleagues are worried in certain cases where they get a refill, that's just a delay of time or intentional underpayment of compensation. Conversely, they want compensation because it gives them a belief that what they want to do will not go on at all. In this case, the commissioner filed a benefit for three children. On the date of the trial, the application was amended down to one child. At that point, we still did not have it. We suspected that he was originally going to adopt it. We did not have that information. We went to the courts to try to get that information. We don't have the actual adoption information. It was proposed subsequently. So the arbitrator admitted that we had a good faith denial in the handling of the issue. And that denial was based on what? That Rahul was not an employee? What was that denial? There was another denial, but the arbitrator also stated that our denial was based on the adoption issues. And, obviously, we were able to win over three children, three potential candidates, without it stopping one candidate, that it was a good faith basis for the facts. What about the issue of the penalties for denying that Rahul, paying Rahul's medical expenses? The apples would be, Rahul, first of all, he owes a total of $700,000. He wants to be denied certified records for those. They turn out to be more like $1,000, $9,000. Well, you challenged those. Those were not paid, right? No, $190,000. It turned out that we only had $9,000 due, and we did not have certified records at the time of the hearing to substantiate those. And they had nothing to do with the argument that he was not an employee at the time of his death? They treated him impartially to that argument, as well as the adoption. Yes. Didn't RDS, as president himself, believe that Rahul was an employee and he was performing the work he was required to perform when the accident occurred? Did that come out of nowhere, or did he testify to that? He did, subsequently, yes. He did, but we also had conflicting information at the time as to whether or not he was an actual employee. We did not have any direct evidence of what the checks were. But after he testified to that, there should have been no doubt that he was an employee, should there? He's the president of the company. Who else would you need to testify? That's correct. But we said we had other issues to deal with at the time. Which the judge, which I'm sure you're aware of, proved not. He was an employee on a specific basis, but he still had a lot of evidence. And that in itself should be a problem, too, not common evidence. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement and written in the transitional ratio.